**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:   (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIFFINI SMITH and MAGGY GOUSSE on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NATURE'S TRUTH INC.**<br><br>**Defendant** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiffs Tiffini Smith and Maggy Gousse ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Nature's Truth, Inc. ("Nature's Truth" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1.      This is a proposed class action on behalf of a nationwide and California class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Triple Strength Apple Cider Vinegar Dietary Supplement ("Product").

2.      Apple Cider Vinegar ("ACV") is a type of vinegar made from fermented apple juice. It consists principally of acetic acid, which is responsible for its taste and numerous health benefits including the promotion of weight loss, lowering of blood sugar and cholesterol levels, improvement of gut and heart health and reduction of inflammation, among others.

3.      The health benefits associated with ACV have made it a popular choice among consumers. In 2024, U.S. ACV sales exceeded $300 million with continued growth expected over the next ten years.

4.      "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source…. [C]onsumers rely on the accuracy of those representations in making their buying decisions."[1]

---

[1] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

5. While this proposition holds true with respect to all consumer goods, it is even more pertinent when it comes to consumer goods that are directly related to a consumer's health and wellness, as is the case with dietary supplements. Its importance is even more consequential when, as is the case here, consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase, but instead must rely entirely on the honesty and integrity of the manufacturers and sellers of the product.

6. Nature's Truth markets, advertises, and sells a line of Apple Cider Vinegar capsules. The Product's principal display panel claims that it is Apple Cider Vinegar. The Supplement Fact Section states that each serving contains 1,200 mg of Apple Cider Vinegar.

 

7.     By law, any product claiming to be Apple Cider Vinegar must contain a minimum of 4% acetic acid. Anything less, the product is not and cannot be called Apple Cider Vinegar and its content rendered inefficacious and worthless.

8.     Plaintiffs conducted analytical testing on 12 representative samples of Nature's Truth's Apple Cider Vinegar Gummies which reveal that the Products, consist of approximately only 2.0% acetic acid, rendering their contents to be worthless and their claim to be "Apple Cider Vinegar" false, misleading, deceptive and unlawful.

9.     Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Product. As a result of this false and misleading labeling, Defendant was able to sell its Products to thousands of unsuspecting consumers throughout California and the United States.

10.     Plaintiffs allege that Defendant's conduct is in breach of express warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

11.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiffs Smith and Gousse are California residents located in Los Angeles county. Defendant Nature's Truth is a New York company which maintains its principal place of business in Bohemia, New York.  The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate

result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## **PARTIES**

13.    Plaintiff Tiffini Smith is a resident of Signal Hill, California.

14.    Ms. Smith purchased Defendant's Apple Cider Vinegar Products approximately bi-monthly from Walmart stores between 2022-2024 from located near her residence. Ms. Smith principally purchased ACV to assist with weight loss.

15.    Ms. Smith made each of her purchases after reading and relying on Defendant's Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

16.    Ms. Smith believed that Defendant lawfully marketed and sold the Product.

17.    Ms. Smith relied on Defendant's labelling and was misled thereby.

18.    Ms. Smith would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

19.    Ms. Smith was injured in fact and lost money as a result of Defendant's improper conduct.

20.    Plaintiff Maggy Gousse is a resident of Los Angeles, California.

21.    Ms. Gousse purchased Defendant's Apple Cider Vinegar Products once to twice a month between 2022-2024 from one or more of Wholefoods, Sprouts, Vitamin Shoppe and Marshalls stores. Ms. Gousse principally purchased ACV to assist with weight control/loss.

22.     Ms. Gousse made each of her purchases after reading and relying on Defendant's Product label, including the principal representation that the Product was Apple Cider Vinegar and contained the represented amounts of ACV.

23.     Ms. Gousse believed that Defendant lawfully marketed and sold the Product.

24.     Ms. Gousse relied on Defendant's labeling and was misled thereby.

25.     Ms. Gousse would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

26.     Ms. Gousse was injured in fact and lost money as a result of Defendant's improper conduct.

27.     Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California laws and the Products are misbranded and adulterated; therefore, the Products are worth nothing or at a minimum less than what Plaintiff and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

28.     Defendant Nature's Truth, LLC is incorporated and headquartered in Bohemia, New York. Nature's Truth sells a wide variety of dietary supplements across the United States, including in California. Their Products are available for purchase on-line along with a variety of conventional brick and mortar retail locations.

## **GENERAL ALLEGATIONS**

### A.     **Apple Cider Vinegar**

29.     Apple cider vinegar is a type of vinegar made through the fermentation of apple juice. The juice is exposed to yeast to ferment the sugars into alcohol. Bacteria converts the alcohol into acetic acid, the primary active compound in vinegar responsible for its taste and health benefits.

30.    "Research suggests that apple cider vinegar may have beneficial health properties, including antimicrobial and antioxidant effects."[2]    It has become a popular over the counter dietary supplement choice among consumers because of its potential beneficial effects on a myriad of health issues including: weight loss,  blood sugar levels,  cholesterol levels, and heart health,  among others.

31.    Acetic acid is apple cider vinegar's primary active compound, giving it its strong sour smell and flavor and most importantly, is responsible for apple cider vinegar's health benefits.[3] While the most efficacious form of ACV is typically as a liquid, ACV gummies and capsules were created to deliver the "benefits" of ACV without the harsh taste of pure vinegar.

32.    As a result of its numerous health benefits, Apple cider vinegar has become a popular choice among consumers.  "Apple cider vinegar products are continuing to grow in popularity as consumers look for a panacea that can address an array of health concerns. For blood pressure and cholesterol support to weight management and more, consumers are finding apple cider vinegar a useful supplement."[4] As a result, the global apple cider vinegar market size was estimated at $644.44 million in 2024 and projected to grow over 1 billion by 2032.[5]

---

[2] *6 Health Benefits of Apple Cider Vinegar, Backed by Science*, Healthline.  Available at https://www.healthline.com/nutrition/6-proven-health-benefits-of-apple-cider-vinegar#supports-weight-loss (last visited 2-21-25)

[3] *Id.*

[4] Why is apple cider vinegar so popular?, Nutritional Outlook, August 18 2023. Available at https://www.nutritionaloutlook.com/view/why-is-apple-cider-vinegar-so-popular. Last visited November 30, 2024.

[5] Apple Cider Vinegar Market Size, Share & Industry Analysis, By Source (Organic and Conventional), By Form (Liquid and Tablet), By Distribution Channel (Hypermarkets/Supermarkets, Online Channels, Traditional Grocery Stores, and Others), and Regional Forecast, 2024-2032, Fortune Business Insights, November 04, 2024. Available at https://www.fortunebusinessinsights.com/apple-cider-vinegar-market-105136. Last visited November 22, 2024.

**B.    Acetic Acid**

33.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of dietary supplements to the consuming public.  21 U.S.C §301.[6] It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

34.    Among its mandates, the principal display panel of a dietary supplement shall bear as one of its principal features a statement of the identity of the commodity. 21 C.F.R. §101.3 As a general matter, the statement of identity of a dietary supplement is the name specified by federal law or regulation, or, if no such name is specified, its common or usual name.[7]

35.    The U.S. Food and Drug Administration ("FDA") has issued a Compliance Policy Guide ("CPG") on the labeling of vinegars. CPG §525.825 Vinegar, Definitions - Adulteration with Vinegar Eels. The FDA policy set forth in the CPG is unequivocal.

> FDA considers the following to be satisfactory guidelines for the labeling of vinegars:
>
> Natural vinegars as they come from the generators normally contain in excess of 4 grams of acetic acid per 100 mL. When vinegar is diluted with water, the label must bear a statement such as "diluted with water to __ percent acid

---

[6] In 1994 the FDCA was amended by the Dietary Supplement Health and Education Act of 1994 to bring dietary supplement under the broader purview of the FDCA. Among other things, it established a series of Good Manufacturing Practices to be employed by manufacturers of dietary supplements to ensure the products meet their label claims.

[7] U.S. Food & Drug Administration Dietary Supplement Labeling Guide: Chapter II. Identity Statement (2016)(" Dietary Supplement Labeling Guide"). Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-ii-identity-statement. Last visited November 22, 2024.

strength", with the blank filled with the actual percent of acetic acid - in no case should it be less than 4 percent. Each of the varieties of vinegar listed below should contain 4 grams of acetic acid per 100 mL.(20oC).

VINEGAR, CIDER VINEGAR, APPLE VINEGAR. The product made by the alcoholic and subsequent acetous fermentations of the juice of apples.[8]

36.     Accordingly, any product claiming to be apple cider vinegar but contains less than 4% acetic acid is not apple cider vinegar. Therefore, labeling it as such is false, misleading, deceptive and in violation of the law. Moreover, failure to provide the minimum of 4% acetic acid eliminates any of the potential health benefits that could be derived from consuming apple cider vinegar thereby rendering this Product worthless.

37.     The FDCA requires every supplement to accurately list its "dietary ingredients [] includ[ing] the quantity of each such ingredient per serving[.]" 21 U.S.C. § 343(q)(5)(F)(ii). "A food with a label declaration of a vitamin . . . shall be deemed to be misbranded under section 403(a) of the FDCA unless it meets the following requirement . . . [w]hen a vitamin . . . meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id*. §101.9(g)(4)(i).

38.     A dietary supplement is also considered adulterated when 21 U.S. Code § 342 (g)(1)  "…it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMP")]."  Here, among other things, cGMP requires that: that a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3 and that each batch is tested to verify specifications for identity, purity, strength, composition. 21 C.F.R. §111.75(c).

---

[8] https://www.fda.gov/media/71937/download.

39.    Although its axiomatic – that a dietary supplement label must accurately reflect the identity of its ingredients and their respective amounts - -  the FDA's Dietary Supplement Labeling Guide makes this abundantly clear.

> Must dietary ingredients that I have added to my products be present at 100% of the amount that I declare?
>
> For dietary ingredients that are specifically added, **your product must contain 100% of the volume or weight that you have declared on the label,** with the exception of a deviation that is attributable to the analytical method. **Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law**. Dietary ingredients that are naturally-occurring must be present at 80% of the declared value.

21 CFR §101.9(g)(3) and (g)(4)(emphasis added).[9]

40.    While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant's labeling, significantly, Plaintiffs do not seek to prosecute or enforce any aspect of the FDCA. Rather, California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"). Moreover, Plaintiffs' allegations that Defendant failed to properly label its Products independently give rise to their stated causes of action detailed below.

---

[9] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling. Last visited November 30, 2024

## C.    Plaintiffs' Analytical Testing

41.    Plaintiffs conducted analytical testing on 12 samples of Defendant's ACV capsules. Test results demonstrate that the Products contain approximately 2.0% acetic acid and accordingly do not contain the promised 1,200 mg of ACV and are worthless.[10]

42.    As detailed above, a product containing less than 4% acetic acid, by law, is not considered apple cider vinegar. Naming, marketing and selling it as such is false, misleading and in violation of the law.

43.    By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

44.    As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## D.    No Adequate Remedy At Law

45.    Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

46.    Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

47.    Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law),

---

[10] Although not required to do so, Plaintiff conducted testing consistent with the FDA's protocol under   21 C.F.R. §101.9(g)(2). The specific lot numbers tested were transmitted to Defendant in the form of a demand pursuant to California Civil Code §1782 transmitted on or about October 16, 2024.

which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

48.    Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

49.    Further, injunctive relief, in the form of affirmative disclosures, are necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

50.    An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

51.    Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No

class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## ECONOMIC INJURY

52.    Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

53.    Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

54.    Nature's Truth guaranteed, and Plaintiffs believed that the purchased Products contained ACV, and in the amounts promised on the label.

55.    Plaintiffs believed that the Products were lawfully marketed and sold.

56.    In reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiffs paid for the Product, or at a minimum, paid a price premium for the Product.

57.    As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that did not contain the promised ingredient, or at a minimum, not in the specified amounts.

58.    Plaintiffs received Products that were unlawfully marketed and sold.

59.     Plaintiffs lost money and thereby suffered injury as they would not have
purchased these Products and/or paid as much for them absent the misrepresentation.

60.     Defendant knows that the statement of identity of a product is material to
a consumer's purchasing decision.

61.     Plaintiffs altered their positions to their detriment and suffered damages
in an amount equal to the amounts they paid for the Products they purchased, and/or
in additional amounts attributable to the deception.

62.     By engaging in the false and deceptive conduct alleged herein, Defendant
reaped and continues to reap financial benefits in the form of sales and profits from
its Products.

63.     Plaintiffs, however, would be willing to purchase Defendant's Apple
Cider Vinegar Products again in the future should they be able to rely with any
confidence on Defendant's marketing as truthful and not deceptive.

64.     Without an injunction, however, Plaintiffs will not be able to purchase
Defendant's Product in the future, even though Plaintiffs would like to, since simply
viewing the ingredient list on Defendant's Product will not afford Plaintiffs the
opportunity to determine the actual contents of the Product.

## **CLASS ACTION ALLEGATIONS**

65.     Plaintiffs bring this action on behalf of themselves and on behalf of
classes of all others similarly situated consumers defined as follows:

> a.  **California:** All persons in California who purchased the Class
> Products in California during the Class Period; [11]
>
> b.  **Nationwide:** All persons nationwide who purchased the Class
> Products anywhere in the United States during the Class Period;

---

[11] Collectively referred to as "Class or Classes."

      c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

66.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

67.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

68.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

69.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

70.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a.  Whether Defendant marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

    b.  Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

    c.  Whether Defendant participated in and pursued the common course of conduct complained of herein;

    d.  Whether Defendant has been unjustly enriched as a result of their unlawful business practices;

    e.  Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

    f.  Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

g.  Whether Defendant's actions violate the Consumers Legal
Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h.  Whether Defendant's actions constitute breach of express
warranty;

i.  Whether Defendant should be enjoined from continuing the
above-described practices;

j.  Whether Plaintiff and members of the Class are entitled to
declaratory relief; and

k.  Whether Defendant should be required to make restitution,
disgorge profits, reimburse losses, and pay damages as a
result of the above-described practices.

71.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs
are consumers who purchased Defendant's Product. Plaintiffs are no different in any
relevant respect from any other Class member who purchased the Product, and the
relief sought is common to the Class.

72.    Plaintiffs are adequate representatives of the Class because their interests
do not conflict with the interests of the members of the Class they seek to represent,
and they have retained counsel competent and experienced in conducting complex
class action litigation. Plaintiffs and their counsel will adequately protect the interests
of the Class.

73.    A class action is superior to other available means for the fair and
efficient adjudication of this dispute. The damages suffered by each individual Class
member will likely be relatively small, especially given the cost of the Products at
issue and the burden and expense of individual prosecution of complex litigation
necessitated by Defendant's conduct. Thus, it would be virtually impossible for
members of the Class individually to effectively redress the wrongs done to them.
Moreover, even if members of the Class could afford individual actions, it would still
not be preferable to class-wide litigation. Individualized actions present the potential

for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

74.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

75.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty**

76.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

77.     Plaintiffs' express warranty claims are based on violations of Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

78.     Defendant made express warranties to Plaintiffs and members of the Class that the Product they purchased was Apple Cider Vinegar and present in a certain amount.

79.     The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product and promised ingredients contained therein marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

80.    Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

81.    Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

82.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain any value, or at a minimum did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

83.    Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

### SECOND CAUSE OF ACTION
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.**

84.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

85.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

86.    A business act or practice is "unlawful" if it violates any established state or federal law.

87.    Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

    a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

    b.    21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

    c.    21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

    d.    21 U.S.C. §342(g)(1) which deems a dietary supplement adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

88.    California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

89.    Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), including, but not limited to, the following sections:

90.    Section 110100 (adopting all FDA regulations as state regulations);

91.     Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account");

92.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

93.     Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised");

94.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded");

95.     Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

96.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

97.     Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

98.     Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

99.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

100.   In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

101.   Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all members of the Class to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***

102.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

103.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

104.   A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

105.   Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any

conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §17200, *et seq.*

106.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

107.    Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and requests that this Court cause Defendant to restore this money to Plaintiffs and the members of the Class, to disgorge the profits Defendant made on their Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

108.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

109.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

110.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

111.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they contain ingredients in promised amounts which they do not contain.

112.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

113.    In accordance with California Business & Professions Code Section 17203, and as Plaintiffs lack an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

114.    Through their fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and the Class, to disgorge the profits Defendant has made, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION
### False Advertising
### Violation of California Business & Professions Code §§ 17500, *et seq.*

115.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

116.    Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on

the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

117.   In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

118.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

119.   Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq*., as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

120.   Pursuant to California Business & Professions Code §17535, Plaintiffs seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiffs additionally request an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiffs and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq.*
### (On behalf of the California Class)

121.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

122.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

123.    Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

124.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

125.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

        a.  §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

        b.  §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

        c.  § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

126.    Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

127.    The representations were made to Plaintiffs and all members of the Class. Plaintiffs relied on the accuracy of the representations on Defendant's labels which

formed a material basis for their respective decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

128.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiffs and the Class have suffered an ascertainable loss of money or property.

129.    Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

130.    On October 17, 2024, Plaintiffs served and Defendant received a CLRA demand pursuant to Civil Code §1782, notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770.  More than 30 days have passed since receipt of the Demand without Defendant providing a proper remedy. Accordingly, Plaintiffs seek the full measure of damages pursuant to Civil Code § 1780(a).

## SEVENTH CAUSE OF ACTION
### Restitution Based On Quasi-Contract/Unjust Enrichment

131.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

132.    Plaintiffs plead this cause of action in the alternative.

133.    Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

134.    Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

135.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.    Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

D.    Statutory penalties for Causes of Action for which they are available.

E.    Punitive Damages for Causes of Action for which they are available.

F.    A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.    An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.    An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.    Such other and further relief as may be deemed necessary or appropriate.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: February 23, 2025                    Respectfully submitted,


_____
Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiffs*